634 A.2d 587

ALLEGHENY LUDLUM CORPORATION, Appellant,

v.

COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee,

**and**

Charles E. Thorpe, Jr., and William Covey, III, Intervenors.

Supreme Court of Pennsylvania.

Argued March 8, 1993.

Decided Nov. 1, 1993.

Stephen B. Spolar, Allegheny Ludlum Corp., Pittsburgh, for appellant.

Clifford F. Blaze, Deputy Chief Counsel, John E. Herzog, Asst. Counsel, Unemployment Compensation Bd. of Review, Ernest D. Preate, Jr., Atty. Gen., for appellee.

Richard E. Gordon, Grossinger–Gordon & Vatz, Pittsburgh, for intervenors.

Before NIX, C.J., LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## *OPINION*

ZAPPALA, Justice.

We granted allocatur in this case to examine the sui generis issue of whether Short Week Benefits (SWB) received by Intervenors are "remuneration" for purposes of determining their status as unemployed within the definition of Section 4(u) of the Unemployment Compensation Law (Act), 43 P.S. § 753(u). The Commonwealth Court (en banc) affirmed the orders of the Unemployment Compensation Board of Review (Board) that in turn had reversed the referees' decisions and granted benefits finding that SWB were not remuneration within the meaning of 43 P.S. § 753(u). We now reverse.

Charles E. Thorpe, Jr. and William Covey, III, Intervenors, are representatives of a group of bargaining unit employees at Appellant, Allegheny Ludlum Corporation. Their collective bargaining agreement between Allegheny Ludlum Corporation and The United Steelworkers of America includes a

Supplemental Unemployment Benefit Plan. The plan includes a provision known as SWB, which provides that employees with two or more years of continuous service will receive thirty-two hours pay for any week in which they are scheduled to work less than thirty-two hours. SWB payments are made from the plan trust fund, which is funded solely by employer contributions and are subject to income tax by the Internal Revenue Service.

The Intervenors and thirty-eight other claimants involved in this action worked substantially less than thirty-two hours during the week ending May 6, 1989, and were paid SWB. Charles E. Thorpe, Jr., worked nine hours during the aforementioned week and received gross wages of $107.28. Because he worked less than thirty-two hours and was otherwise eligible for SWB, he was provided payment from the plan trust fund for an additional twenty-three hours in the amount of $392.42. During the same week in question, William Covey, III, worked eight hours for which he earned gross wages of $86.00. In addition to his earnings, he was paid SWB from the plan trust fund for an additional twenty-four hours in the amount of $346.16.

Thereafter, the Intervenors, along with the thirty-eight other claimants, filed for unemployment compensation benefits with the Office of Employment Security (OES). Thorpe's Employer's Notice of Application filed with OES indicated in item C(3) that the reason for the separation was that the department shut down. However, in item D(2) of the same form, he indicated that the separation was temporary and the expected recall date was May 10, 1989. Similarly, Covey's Employer's Notice of Application indicated in item D(2) that the separation was temporary due to a breakdown. OES denied these claims. Both the Intervenors appealed the denial of benefits. Contemporaneously with the filing of these appeals, an agreement was entered into which rendered the proceeding before the referees applicable to all of the thirty-eight other claimants.

OES' denial of benefits was affirmed as to both Intervenors by separate referees at separate hearings. The referees

determined that the SWB payments constituted remuneration within the meaning of Sections 4(u) and 404(d)(1) of the Act, and therefore were properly offset against claimants' entitlement to unemployment compensation for the week at issue. Specifically, the referees found that Charles E. Thorpe, Jr. and William Covey, III could not be considered unemployed because their actual earnings of $107.28 and $86.00, respectively, when combined with their SWB payments of $392.42 and $346.16, respectively, were greater than the unemployment compensation benefit rate of $266.00 for which they would have otherwise been entitled to, plus a partial benefit credit of $107.00.

The Intervenors then filed separate appeals from the referees' decisions to the Board. The Board reversed the referees' decisions and granted both Thorpe and Covey benefits. The Board, relying upon *Hargenrader v. Unemployment Compensation Board of Review*, 99 Pa.Commw. 626, 513 A.2d 1135 (1986), concluded that the SWB payments made to the Intervenors were not remuneration because they were not attributable to any work performed during that week and therefore, only the Intervenors' actual earnings for the work performed could be properly offset in calculating entitlement of benefits.

The Commonwealth Court, in affirming the orders of the Board, focused on the Supplemental Unemployment Benefit Plan and determined that there was no distinction between the SWB provision of the plan and another plan provision for supplemental unemployment benefits (SUB) 140 Pa.Cmwlth. 147, 591 A.2d 1186 (1991). The majority of the Court reasoned that conceptually SUB and SWB payments are the same because neither SWB nor SUB are payment for services performed. For this reason, the Court found that *Hargenrader* controls this case. The Court concluded its analysis by stating that the plan was not contrary to the public policy of the Act since the plan clearly intended to provide SWB payments regardless of whether employees are also eligible for state unemployment compensation.

Judge Palladino, in her dissent (in which Judge Smith joined), stated that the focus of the majority in detailing the

terms of the Supplemental Unemployment Benefit Plan was misdirected. The only relevant inquiry, according to Judge Palladino, was whether the employees were employed under the Act. Judge Palladino reasoned that the requirement that work be performed before SWB are dispensed distinguishes the SWB in this case from the SUB involved in *Hargenrader.* This interpretation, according to Judge Palladino, is consistent with the policy of the Act which is set forth in Section 752. Judge Palladino concluded by stating that the plain fact is that employees in this case have not suffered from the crushing force of indigency which can be caused by involuntary unemployment.

In addressing the issue with which we are presented, the only relevant inquiry is whether the employees were employed under the Act.

■ Section 4(u) of the Act defines the term unemployed as follows:

> An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or *(II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.*

43 P.S. § 753(u) (Emphasis added). The term remuneration, however, is not defined anywhere in the Act. Nevertheless, Section 4(x) of the Act defines wages as "All remuneration . . . paid by an employer to an individual with respect to his employment. . . ." 43 P.S. § 753(x). Section 4(*l*)(1) of the Act defines the term employment as "all personal service performed for remuneration by an individual under any contract of hire. . . ." 43 P.S. § 753(*l*)(1). Although not defined in the Act, it is well established that remuneration is generally defined as payment for services performed. *Gianfelice Unemployment Compensation Case,* 396 Pa. 545, 153 A.2d 906 (1959).

Appellant argues that the *Hargenrader* case is inapposite and that the Board's reliance thereon was error because that case dealt with SUB payments and not SWB payments. Appellant contends that there is a marked difference between SUB and SWB and maintains that because an employee must have worked for some portion of the week in order to be eligible for the SWB, that the SWB must be deemed remuneration for purposes of determining unemployment status under Section 4(u)(II) of the Act.

In *Hargenrader v. Unemployment Compensation Board of Review,* 99 Pa.Commw. 626, 513 A.2d 1135 (1986), the court was presented with the question of whether SUB received by the claimant from U.S. Steel, an employer, constituted wages within the meaning of Section 4(x) of the Act, so as to be included in the total of the claimant's base-year wages for the purpose of determining his eligibility. The claimant, who was seeking a determination that he was financially eligible to receive extended unemployment compensation benefits, argued *inter alia* that SUB should have been counted as wages.

The facts of the case were that claimant had been employed by U.S. Steel and Judith Messer. He became eligible for unemployment compensation and received benefits pursuant to an application filed with the OES on April 3, 1983. During this time, the claimant received $214.20 in benefits from a trust called a Supplemental Unemployment Benefit Plan established by U.S. Steel pursuant to a provision of the collective bargaining agreement between it and its organized employees. The Supplemental Unemployment Benefit Plan paid benefits to workers during layoffs and during weeks in which they worked fewer than 32 hours.

After exhausting his regular unemployment compensation benefits, the claimant filed an application with OES for extended benefits effective October 9, 1983. The OES issued a determination finding the claimant financially ineligible. It refused to include as wages the $214.20 in SUB.

The Commonwealth Court, in affirming the order of the Board, concluded that the payments received by an employee

under the terms of a Supplemental Unemployment Compensation Plan were not wages as defined by Section 4(x), with reference to Section (4)(u) of the Act. The court was persuaded by two formal opinions of the Attorney General of Pennsylvania which advised that an individual could receive benefits under both the Supplemental Unemployment Compensation Plan and the Act because such an individual met the basic qualifications of being unemployed as defined in Section 4(u) in that he performs no services and receives no remuneration. The Court also was persuaded by decisions to the same effect by the courts of last resort of Maine and North Carolina, *Malloch v. Maine Employment Security Commission*, 159 Me. 105, 188 A.2d 892 (1963); *In re Shuler*, 255 N.C. 559, 122 S.E.2d 393 (1961).

The payments Hargenrader received under the terms of the Supplemental Unemployment Compensation Plan were for SUB. As such, the court concluded that the payments were not wages because the claimant was unemployed and therefore performed no service for his employer.

While Hargenrader, like the Intervenors in the case *sub judice*, received payments under the terms of a Supplemental Unemployment Benefits Plan, the eligibility requirements for the SWB are markedly different than SUB. In order to be eligible for SUB payments, an employee must be on a layoff, defined as does not work at all, which occurred in a reduction in force or as a result of the permanent shutdown of a plant, department or subdivision. R. 28a. An employee, however, will receive SWB for any week in which less than 32 hours are worked for the company. R. 31a. The requirement that work be performed before SWB are paid distinguishes the SWB payments in this case from the SUB payments in *Hargenrader*.

The Intervenors, with whom Appellee joins, argue that Appellant's characterization of SWB as remuneration for services performed is flawed. It is the Intervenors' contention that such reasoning would mean that Appellant is paying them not to work. In other words, SWB payments are for services not performed. This claim is meritless.

The predicate to receiving SWB is that an otherwise eligible employee work for some but less than 32 hours for the Company. Because service must be performed in order to receive SWB, we hold, therefore, that the payment of SWB is remuneration for purposes of determining whether or not a claimant is unemployed within the definition of Section 4(u) of the Act, 43 P.S. § 753(u).

This interpretation is consistent with the policy of the Act which is set forth in Section 752 in pertinent part as follows:

... Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own.... The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. § 752. The plain fact is that the Intervenors in this case have not suffered from the crushing force of indigency which can be caused by involuntary unemployment. As their unemployment compensation applications indicated, the reason for the interruption in the services they were performing for Appellant was due to a temporary department shutdown and a breakdown. Furthermore, Charles E. Thorpe, Jr. and William Covey, III cannot be considered unemployed because their actual earnings of $107.28 and $86.00, respectively, when combined with their SWB payments of $392.42 and $346.16, respectively, were greater than the unemployment compensation benefit rate of $266.00, for which they would have otherwise been entitled to, plus a partial benefit credit of $107.00.

The order of the Commonwealth Court is reversed and the referees' decisions denying benefits are reinstated.

Jurisdiction relinquished.

LARSEN, J., did not participate in the decision of this case.

PAPADAKOS, J., files a dissenting opinion in which CAPPY, J., joins.

PAPADAKOS, Justice, dissenting.

The only issue before us for review in this matter is whether Short Week Benefits (SWB) made to employees of Allegheny Ludlum Corporation who work some but less than 32 hours per week are "remuneration" for purposes of determining the employees' eligibility for unemployment compensation benefits under the law.

SWB payments are provided for in the collective bargaining agreement with the employees and Allegheny Ludlum Corporation (Appellant) and the purpose for these payments was set forth in the Foreword to the Plan on Page 1, as follows:

This plan is intended to supplement state system unemployment benefits, and not to replace or duplicate them, and to provide other benefits related to unemployment.

In other words, the parties to this agreement understood that to the extent the employees were working less then 32 hours they were "unemployed" and entitled to SWB payments in addition to any state unemployment benefits they may be entitled to receive because of their unemployed status. In addition, the agreement provides that an employee who applies for state unemployment benefits for any portion of a week in which he is also eligible for SWB payments must notify the employer of the application and any benefits received. One-seventh of the amount of such state unemployment benefits is deducted from the SWB payment for each day of the state benefit week. (Sections 4.3 and 4.7 of the Plan). Finally, Section 7.7 of the Plan provides that:

When an employee receives Benefits under the Plan he shall not by reason thereof be deemed to be working for the

Company during such period, nor shall he by reason thereof receive benefits under any other benefit plan to which the Company contributes other than those to which he would be entitled if he were not receiving Benefits. (Emphasis added)

Why the majority ignores this clear language in its attempt to determine the issue before us is unclear. The employer seems to have understood that these SWB payments were being made to unemployed workers for services not performed during a particular 32 hour work week. Such payments cannot be considered to be remuneration, in my view, and I dissent to the majority's conclusion that because a worker works one hour in a 32 hour work week, the 31 hours of SWB payments represent payment for services performed or remuneration. In effect, SWB payments are nothing more than private unemployment compensation to enhance the take-home benefits of those unemployed through no fault of their own.

Equally tortured to me is the majority's suggestion that a "marked difference" exists between the Supplemental Unemployment Benefits (SUB) (payments made for no work during a 32 hour work week) and these SWB benefits. Both are designed to provide compensation to employees who are without work through no fault of their own and are not payments for services performed.

The majority holds that these employees are ineligible for unemployment compensation benefits because of the fiction that they were remunerated. In reality, these employees did not work and should be allowed to apply for unemployment compensation under the Unemployment Compensation statute and then to have their SWB payments adjusted pursuant to the terms of the collective bargaining agreement that Appellant and the employees entered into freely.

Accordingly, I dissent and would affirm the Opinion and Order of the Commonwealth Court which clearly and distinctly analyzes the issue.

CAPPY, J., joins this dissenting opinion.